Financial, et al., Mr. Quirk. Good afternoon, Your Honors, and may it please the Court. I'm Michael Quirk for the Plaintiffs' Appellants. With the Court's permission, I'd like to urge the Court to reverse the District Court's rulings compelling them to arbitrate their breach of contract claims and dismissing their New Jersey Consumer Fraud Act claims under Rule 12b-6, starting with arbitration. Defendants waived any right they ever had to arbitrate. The procedural facts here pertaining to waiver are not disputed. Under decades of this Court's amount of delay, litigation, and discovery that took place prior to defendant's arbitration motion would normally be overwhelming evidence of waiver. Well, but of course, as we all know, there's a contention here that it would have been no futility jurisprudence from this Court in this particular area. First of all, I'd ask you, do you know of any Courts of Appeals that have dealt with that question, that have not adopted a futility exception to waiver? I'm not aware of any decisions that have said categorically there is no futility exception to waiver. So just as a jurisprudential matter, why should we not follow those Courts that have and adopt a futility exception and then go on to address whether or not it was futile? Because the Courts that have adopted the futility exception to waiver have held that it doesn't apply in the post AT&T versus Concepcion context that we have here. Every appeals court that has addressed the version of the futility argument that defendants are making here have rejected the argument, not because there's no such thing as futility, but because it doesn't apply here. Why does futility not apply here? The defendants started out agreeing that the standard for finding futility is that the defendants did not have a right to arbitrate, that their arbitration clause was unenforceable prior to the trigger event. And your contention is that that's wrong, correct? That's wrong on the application here. Because you have an arbitration provision here that says nothing about class action waiver, is that correct? That is correct, and that's one of the reasons. And I would submit that the Courts that have adopted a futility exception and applied it and found futility found it where the prior law prohibited the defendants from arbitrating lock, stock, and barrel. Here the defendants say that prior New Jersey law prohibited them from arbitrating, but that's wrong. For one reason, the New Jersey case that they relied on... It didn't prohibit them from arbitrating on a non-class basis? That's correct. What's correct? I would break out that point. It didn't prevent them from such a... No, no, I'm sorry, I misunderstood. I heard a negative in the question. The prior New Jersey law did not prohibit individual arbitration. What it did was apply a multiple factor test. The New Jersey Supreme Court's Muhammad v. County Bank... Isn't the point that in Muhammad they threw out the class action prohibition, but enforced the arbitration provision? That's right. So that the arbitration provision was totally enforceable as to individual arbitration, correct? The defendant in Muhammad itself, after the New Jersey Supreme Court was done, had a right to arbitrate. Mr. Cooker and I know that well, we arbitrated that case. But putting that aside, even if we look at... And the defendants haven't shown any authority that looks at this difference between individual and class arbitration, and have said, if you had a prior right to class arbitration, and then after the change in the law, you have a right to individual arbitration, that demonstrates futility. But again, and I'm sorry to keep saying... But how... Where do we have established in past cases a right to have class arbitration? The... I would point to this court's... In the facts in Muhammad, we have an agreement that provides that there be no class arbitration, correct? Correct. And in the agreement that we have now before us in this case, there's simply no mention of class arbitration. Is that right? There's no explicit mention. The question about where has this court found a right to class arbitration... Why do you say there's no explicit mention? Why should there be any mention at all? I mean, don't... If we know anything from what the Supreme Court of the United States has told us in recent decisions, it is that there are profound differences between the class action device and class litigation, and traditional bipolar litigation, right? At the same point, no court has held that that difference is so profound that if there was a prior right to class arbitration, that justifies a party sitting on its rights for two and a half years. But even if it did, the real fundamental point here is New Jersey law did not prohibit individual arbitration. It applied a multiple factor test, and several of the factors identified in Muhammad v. County Bank are unclear as to their application of this case, because this case is different from Muhammad in at least three important particulars under the Muhammad test. Let's just assume that this court did adopt a futility exception. That doesn't, of course, mean you lose. So I'd like to see how you reason through this case in the event we were to hold that our jurisprudence recognizes a futility exception. The typical version of the futility exception, and it's been recognized in the 8th, 9th, 10th, and 11th circuits, and they use different words, but I think they boil down to largely the same thing. In the 11th circuit, in Garcia v. Wachovia, it said, absent controlling precedent for closing a right to arbitrate, futility doesn't apply. And so taking that here, did prior precedent foreclose a right to arbitrate? And even looking at it on an individual basis, the defendants can't establish that Muhammad prohibited individual arbitration here. Let me back up a minute. Is Muhammad really relevant here? Muhammad has arbitration provision with huge, you know, prohibiting class and lots of prohibition, and based on that New Testament, etc., etc. The arbitration provision here is very different. It is extremely different. There is no mention of class. I don't know how you can read in here any kind of prohibition. It has the ability to have one party choose arbitration. Both have to agree if it's over a certain amount. To my mind, I'm wondering why you're not arguing that this is not a Muhammad case. Well, it's not a Muhammad case for that reason. We did argue that in our briefs. But ultimately, Judge Sheridan did look at the arbitration clause and find that it only provides for individual arbitration. Well, yes, but he did that after extensive hearings, correct, and lots of litigation, which says to me that it's not futile. In fact, it's extremely debatable. And that's exactly our bottom line. At most, it's debatable. I'm having trouble finding it debatable, but at most, it's debatable. And that's our bottom line point, that if the defendants had moved for arbitration when the case was filed in 2009, we certainly would have had arguments to move to preserve a class action. It would not have been a slam dunk. It would have been anything but a slam dunk for the reasons that we've given. Muhammad involved that he's in contract. In fact, they may not have moved at that point because they thought it would allow class arbitration. I have no idea why they didn't move at that point. It's just what we do know is it was a case for Muhammad. Why should they assume it allowed class arbitration? I don't think the court should assume it allowed class arbitration. I think I agree with Judge Rendell's point that these are all giant question marks that we don't know. And futility requires certainty of failure. What we have here are – Where do you get that test, certainty of failure? From the 11th Circuit's Garcia case. I mean, the 11th Circuit said it more artfully than I did. So it did not say certainty of failure. It said, absent controlling precedent for closing a right to arbitrate, futility does not apply. I mean, I boil that down to certainty of failure. But absent precedent prohibiting them from arbitrating, they can argue futility. And they just didn't have that precedent here. And so that's why we submit that the futility argument fails. And if the futility argument fails, the procedural evidence for waiver is overwhelming based on all the delay and litigation. They certainly didn't have Stolt-Nielsen. They certainly didn't have Stolt-Nielsen. Well, they did have Stolt-Nielsen, but in a sense, they had Stolt-Nielsen for a year. They moved over a year after Stolt-Nielsen was decided. I understand that. What they waited for was Concepcion. But Concepcion only answers a preemption question. It doesn't answer the antecedent state law question of unconscionability. That's where the giant question mark was. And we don't know whether if they had moved it would have resulted in class arbitration, individual arbitration, or no arbitration. And absent a precedent dictating that outcome against them, they can't argue futility. If I could turn to the New Jersey Consumer Fraud Act claim really quickly. The district court dismissed the claim saying that it was holding that it was barred by an exemption for professional services that aren't covered by the act. We submit that this holding was the service that's at issue in this case was the defendant's settlement agents filed mortgages and deeds for the counties of New Jersey to record. This was a ministerial act of bringing a document to a government office. If there's a service at issue, it's the government that performed it, and all that the agents did was deliver a document and then overcharge people by anywhere from $70 to $350. But doesn't Plemons, where the health insurance brokers are exempt because they're subject to testing, licensing, and regulation. I mean, hasn't the act been construed to cover people who are really subject to regulation, such as people regulated by the Title Insurance Act? My time is up, but if I can answer that. People who are licensed are exempt from the act if they're acting within the scope of their license. So in the Plemons case, the insurance brokers were licensed for the sale, solicitation, and negotiation of insurance. That's the scope of the broker's professional licensure. This isn't any of those things. But this is Title. They're Title agents. What is their function, and what is their status? Their function is a lot of things, and the New Jersey Supreme Court looked at this in opinion number 26, and what it said is a lot of the things that happen at a closing can be deemed professional and require a professional's knowledge, but not everything. We submit this is one of the things that does it, because it's simply the act of bringing the document to the government for the government to record. That's a very important act, and if it doesn't happen, and if it isn't done properly, there's a problem. It may be necessary, but the only act done by the licensed professional is a delivery. The government actually does the recording, and then the professional overcharges the consumer for the work the government did. That's not covered in any of the cases, and we submit this is not exempt conduct. But the issue here is the contents of the document, not just the filing, and doesn't that bring in the professional aspect of the person filing it? I agree that the contents of the document may well bring in the professional knowledge, and if this were a claim based on some kind of malpractice or malfeasance in the creation of the contents of the document, that might well present a different question than we have here. But all we have here is getting the document from one office to another, and we submit it. That doesn't, there's no indication in the record that that ministerial act requires any kind of license. All right, thank you. We'll have you back on rebuttal, Mr. Clark. Mr. O'Donnell. May it please the Court, Michael O'Donnell, Riker, Danzig, Sher, Heil, and Peretti, speaking for all defendants. Your Honors, before I address the arbitration of consumer fraud claims, let me just say three sentences about the facts of this case, of this action. First, this is a class action against the title insurers who did not receive anything from the alleged overcharge. Second, the attorney and settlement agents who were responsible, all licensed, and all recorded those alleged charges on the HUD-1. And the third is that the insurers here never made a demand against the closing service letters before filing the suit, and indeed, most have testified they never made a demand on the closing service letters. Now, with regard to the arbitration demand. Mr. O'Donnell, why did you not move for arbitration at the beginning of this case? Because at the beginning of this case, Judge Rendell, we did not have the ability to move for individual arbitration, which is what this clause provides for. And it's not just me saying that, Judge Rendell. It's the Third Circuit saying that. The Third Circuit said that in the Homa decision in 2009, when it said, we did not... And we followed Mohamed, essentially. We followed the Mohamed reasoning, right? You followed Mohamed in Homa, and you followed Mohamed in Littman. And then when Concepcion came down in Littman, the court expressly addressed that they're bound by the presidential... When Homa comes down in February 2009, you filed, or this action was filed when? This action was filed... In 2009, right? Correctly. And the Homa decision came down one month after, Your Honor. And it's not just... Why you did not file? Because the clause does not allow for... No, my clause allows for individual arbitration. It only allows for individual arbitration. How do you read that it only allows for individual arbitration? Your Honor, I read it only allows for individual arbitration. I mean, there's no prohibition in here of class arbitration. No waiver of class arbitration. There is no waiver of class arbitration. But what there is, Your Honor, specifically, is all of the references in the arbitration clause are to the singular. It says, unless prohibited, either the company or the insurer may demand arbitration. The arbitrable matters include, but are not limited to, any controversy or claim between the company and the insurer arising out of or relating to this policy. Any service of the company, da-da-da-da-da-da. I'm having a problem reading that, to prohibit, to prohibit. And I think that's what the problem is. Well, it says, well, under Stolt and Concepcion, the courts are not entitled... Well, but Stolt wasn't decided when you had to make that decision. No, no. Stolt was not decided, but Stolt still is controlling for this court as to how it decides whether a clause provides for class arbitration. And Stolt says you cannot read into mere silence class arbitration. That's all you have here in this case. You could have litigated whether this did or didn't provide for it, just like it was done later. It was not totally futile. Well, you're reading it to say individual, but there is no prohibition, and that's what Mohammed in the case law talks about, when there is a prohibition it does not allow. You're looking at a reading, and you're reading it one way, I'm reading another. Wouldn't that have been subject to litigation at the time? No, Your Honor. Because... You're relying on HOMA. You look at HOMA. What ability do you have to pressure position under HOMA? I don't have any ability to do that for individual arbitration. And that's what you want. Exactly. And Your Honor, it's not only me saying this, it's the class action plaintiffs. They argue consistently that even after concepts you own, that Mohammed prevented enforceability of my clause with regard to individual arbitration. In particular, I would point the court to their September 6, 2011 brief in opposition to the motion to compel arbitration. Docket number 221 at 3940. They expressly say, thus whatever the effect the Supreme Court's later decision in AT&T mobility v. Concepcion might have otherwise had, it does not supersede New Jersey law here where the arbitration clause is expressly requires application. Then the very next section is, under New Jersey law chosen by the defendants, a requirement of individual arbitration of the plaintiff's claims would be unconscionable. In fact, Judge Sheridan had to deal with that argument when he decided the motion to compel arbitration. And I would cite to his finding in the appendix at JA 28. You are saying because we knew what New Jersey law was, there was a very strong public interest against waiving arbitration, that any provision that would be read as only providing for individual arbitration would be ignored by the New Jersey courts and interpreted as permitting either individual or class arbitration? No, what I would say is even if the provision was silent on whether you could class arbitrate, the New Jersey court's only decision is it would only be enforceable if it provided for class arbitration. So if you applied for individual arbitration at that point, you were opening yourself up for class arbitration? Exactly. And this is a permissive clause, and I would never, ever open myself up for class arbitration. What case says that silence constitutes a prohibition of class arbitration? Well, there's no case that silence alone constitutes a prohibition. But Stolfi Nielsen says that you cannot read into mere silence an ability to class arbitration. And that is because, and Stolfi Nielsen speaks at length about this, the profound differences between class litigation, the nature of a class, the class device, and traditional bipolar litigation. Exactly, exactly, Your Honor. And in particular, it was filed up by Concepcio, and it's also filed up by the Sixth Circuit's decision in Reed v. Crockett, where Reed v. Crockett expressly says, the personal reason to conclude that this arbitration clause does not authorize class arbitration is that the clause nowhere mentions it. So we have the Supreme Court twice and the Sixth Circuit. And on the other side, every single decision cited by class counsel is the court's affirming an arbitrator's decision, expressly noting that because of the deference given to arbitrators, it doesn't matter whether the arbitrator was right or wrong. Indeed, the Supreme Court in Oxford v. Sutter noted that, and Justice Alito said if we were looking at this clause, we would have no doubt the arbitrator was wrong and did not allow for class arbitration. Let me take you back to the jurisprudential questions I sought to explore with Mr. Quirk. And that is, first of all, I assume you would have us adopt explicitly the futility exception, the waiver? Yes, I would, Your Honor. Okay. But let us assume that we did that, and then also that we found that the futility exception was appropriately provided, appropriately invoked by you. But in the Third Circuit, unlike those other courts of appeals that have adopted the futility exception, we have Hawksworth to deal with, which seems then to require us to look beyond a mere determination of futility, but to look at the Hawksworth factors and still decide whether or not there is prejudice here to the other side. So you do not automatically win by a determination of futility. How do you justify your actions or inactions in particular and get past the long delay and any other substantive consequences that may result from the delay here? I justify it first by saying we do not have Hawksworth here. Hawksworth is not a futility case. I know it's not a futility case, but it's there, and don't we have to consider it for prejudice purposes? The law in every circuit has been. In other words, what you would have us do is adopt nothing but a pure futility test that would ignore Hawksworth and not require you to go through those five hoops. I would not necessarily go that far, but you can't waive a right that you didn't have. We don't have a situation like we had in the Ninth Circuit in Gutierrez where the issue was there had already been dispositive motions, class certification, trial, a 90-page opinion, and you had a situation of inconsistency. Perhaps if it went to arbitration, the arbitrator would come to a different result from the court. We don't have that here in this case. We haven't even gotten to the stage of a class certification hearing. What we have essentially is what the Ninth Circuit had. What we do have here, though, is some substantial discovery that's been undertaken and the delay consequent from that, don't we? You have substantial discovery, but you also have the Fisher decision, which is the Ninth Circuit, which was four years of litigation when the Supreme Court came out with its decision in Dean Witter v. Burr which rejected the intertwining doctrine. When that happened, that's the first time those parties had the right to seek arbitration on arbitral clauses that were not intertwined with non-arbitral. Fisher, Conover, which is two years, all held that when it's the first right, the prejudice isn't outweighed. In addition, this very clause was decided in NRA California antitrust litigation. And in there, that's a 2008 case. The court expressly found that we did not have a right to move for individual arbitration until Concepcion. It would have been futile to do so and compelled individual arbitration. In Corvados v. Macy's, another Central District of California case, an employee class action, again, there had been a motion to dismiss and a class certification motion. Still, still the court found it was appropriate to bring the motion to compel arbitration when we first had that right. It's a fundamental principle of jurisprudence. You can't waive a right you don't have. It has to be a knowing relinquishment of a right. And just to repeat for emphasis, the right you don't have here is what? The right to move for individual arbitration. That's the only thing the defendants have asked for over and over again. The defendants have even said if the judge were to find class arbitration, it should go to class action. We asked for one thing only, individual arbitration. And there was no right to do that until the Concepcion decision came down. That's why this court said Concepcion created a sea change in the law. Now, with regard to the issue of do the clauses provide for class arbitration, I would always Did you just say you didn't have a right to individual arbitration? That's exactly what I said. Okay. With regard to the clause, the clause also provides a sentence that says, A, all arbitral matters when the amount is one million or less shall be arbitrated. All arbitral matters when the amount is excess of one million shall be arbitrated. Only when both parties agree. That's a clear indication that this clause provides only for individual arbitration. The damages in this case are $150 million. You can hardly imagine a class action that the damages would not be in excess of seven figures. So for those reasons, and the reasons we've cited in brief, we clearly believe there's no basis whatsoever to find that the clause provides for class arbitration. Judge Sheridan had a hearing on this, and the standard of review of that decision is clearly erroneous. Your position is when it says in excess of a million dollars shall be arbitrated when agreed upon, you read that, by both parties, you read that as a prohibition. I read that as one indicator. I read the use of the singular. I read one million or above. I read the fact that nowhere, Judge Rendell, does it allow for class arbitration. I think if you take the analysis of Stolten Concepcion, you cannot find that that clause provides for class arbitration. I also read the history of this clause. In 1990, it was agreed to. Class arbitration was an unknown animal. How do we know that? Because in Concepcion, the United States Supreme Court said it, page 351. I guess I'm curious as to the district courts having extensive hearings as to whether this particular clause provided for individual only or class, and it was litigated. I guess my question is doesn't that say that it could have been litigated two and a half years before and it was not indeed futile to have tried? No. Why? Because two and a half years ago, Mohammed was still good law. Once Mohammed fell out of good law, I then had the right to bring my motion to compel individual arbitration. But the same issue would have been decided. Did it prohibit individual? Did it provide for individual and class? It was the same issue. Because it wasn't entirely unenforceable. You had to just determine what was permissible. If I brought that motion in 2009 and the court found it provided only for individual arbitration, it would have been preempted under the Mohammed decision. I believe Mohammed is still here. But there was a question mark. I didn't seem to be sanctioned for doing that. You wouldn't have been sanctioned for doing it? The plaintiff, even after Concepcion came down, Judge Rendell, argued Mohammed prohibited individual arbitration. Even after Concepcion. The judge, Judge Sheridan, had to address it in his opinion. Thank you. Thank you very much, Mr. Rendell. I rely on my brief for the consumer fraud, Your Honor. Yes, sir. Thank you. Greg, we'll have you back in rebuttal. Thank you, Your Honor. I'd like to address two primary points. The first is answering Judge Smith's question about how do we reconcile the futility cases with Hawksworth. I would refer to the Ninth Circuit's Gutierrez decision on this because it looked at that exact issue. It said it first looked at California law very like New Jersey law here, using the same unconscionability factors, sometimes invalidating class action waivers, sometimes enforcing them, and said that is not a clear-cut case of futility. We don't know what would have happened. But then it went on and said even if it were a clear case of futility, we still look at prejudice. We still look at the prejudice to these plaintiffs in the Gutierrez case. And that's what Hawksworth, if we deem it applicable here, and I recognize Mr. O'Donnell's position to the contrary, requires us to inquire into. In other words, it's an additional step in the analysis, even if, as you suggested. If the Court adopts a futility analysis and even finds that it applies here, which the Court is painfully clear with my reasons why it shouldn't, but if it did, it still would have to look at prejudice. And what we submit is under this Court's cases looking at prejudice. But Gutierrez found no futility. Pardon? It said that it found no futility, and then went on to say even if there were, we still look at prejudice, and the prejudice would be overlooked. And I assume you would agree that there is at least something of an overlap between the futility analysis and the Hawksworth prejudice analysis. Right. What Hawksworth and Gutierrez addressing futility both say is that prejudice to the non-moving party matters here. And this Court has, if it's done nothing else, it's clearly defined what constitutes prejudice looking at delay, the amount of litigation, the amount of discovery, all of the Hawksworth factors apply very strongly here for the reasons that we've given. If I could just make one last point about this, but is there even futility? Judge Smith asked Mr. O'Donnell, didn't HOMA ultimately decide this? And I strongly resist that. HOMA decided the is New Jersey law preempted question, but it didn't decide what is New Jersey law and how does New Jersey law apply here. Mohammed v. County Bank uses a six-part unconscionability test, the first step of which, is it a contract of adhesion? Defendants here argue vehemently it's not. Defendants say that everybody had the right to reject the arbitration clause. Wasn't it reasonable for the defendant here to rely upon the holding in HOMA and hold their fire? Wasn't that reasonable? No. It was unreasonable? Because even if the preemption question is off the board, the absence of preemption doesn't mean that provision is unenforceable. We still have to determine is the provision unconscionable or not? And the reasons why this case presented questions, I'm not saying how they would have been answered, but the questions are does Mohammed apply when it's not a contract of adhesion, like there was in Mohammed, but like defendants say there's not here. Does Mohammed apply to common law claims like we have here, but you didn't in Mohammed? And does Mohammed apply when the government, the state government, has approved the contract, which they say happened here, but wasn't at issue in Mohammed, where it was a truly renegade contract charging 20 times the criminal user limit? Those are all uncertain questions. We've had arguments, but we weren't there in any way. We understand your position, Mr. Quirk. Thank you very much, and thank you to both sides, to all of the counsel. The case presents some very interesting issues. It was well briefed and well argued. We thank you very much.